IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| L.K.L. ASSOCIATES, INC., a Utah corporation; and HEBER RENTALS, LC, a Utah limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>Defendant and Counterclaim Plaintiff. | **MEMORANDUM OPINION AND ORDER**<br><br><br>Case No. 2:15-CV-00347-BSJ<br><br>District Judge Bruce S. Jenkins |

Plaintiffs L.K.L. Associates, Inc. ("LKL") and Heber Rentals, LC ("Heber Rentals") (hereinafter collectively "Plaintiffs") filed a Motion for Summary Judgment on July 28, 2017.[1] After the motion was fully briefed by the parties,[2] the matter came before the court for hearing on August 24, 2017. David R. Nielson appeared on behalf of Plaintiffs. Julianne P. Blanch and Adam E. Weinacker appeared on behalf of Defendant Union Pacific Railroad Company ("Union Pacific").[3] After lengthy arguments and discussion, the parties requested the court reserve on the matter until September 7, 2017, in order to give the parties time to revisit settlement negotiations.[4] The parties were unsuccessful in their settlement attempts.[5] On September 8, 2017,

---

[1] Pls.' Mot. for Summ. J., filed July 28, 2017 (CM/ECF No. 127).

[2] *See* Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132); Pls.' Reply Mem. in Supp. of Their Mot. for Summ. J., filed Aug. 21, 2017 (CM/ECF No. 137).

[3] *See* Minute Entry (CM/ECF No. 138).

[4] *See id.*

[5] *See* Notice of Unsuccessful Settlement Discussions, filed Sept. 7, 2017 (CM/ECF No. 142).

Union Pacific submitted to the court a Notice of Supplemental Authority,[6] attaching a copy of a newly issued Memorandum from the U.S. Department of the Interior's Office of the Solicitor (the "2017 M-Opinion") regarding the scope of railroad right of ways under the General Railroad Right-of-Way Act of March 3, 1875 (the "1875 Act").[7] The court held a status conference regarding Union Pacific's supplemental authority on September 19, 2017, during which the court set deadlines for the parties to submit additional briefing.[8] All additional briefing was completed on November 13, 2017.[9]

Having considered the parties' briefs, the evidence presented, the arguments of counsel, and the relevant law, the court hereby GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Summary Judgment. The court denies Plaintiffs' Motion for Summary Judgment as to its claim for rescission and return of lease payments. The court finds rescission unwarranted because (i) the claim is untimely, and (ii) rescission is redundant because the lease agreements do not serve a railroad purpose and therefore are unenforceable. The court further denies Plaintiff's Motion for Summary Judgment as to its claims for declaratory relief, as the declarations sought are in excess of the necessities of this case. As to Union Pacific's counterclaims, the court grants Plaintiffs' Motion for Summary Judgment.

---

[6] Union Pacific's Notice of Suppl. Authority, filed Sept. 8, 2017 (CM/ECF No. 143).

[7] 2017 M-Opinion (CM/ECF No. 143-1).

[8] *See* Minute Entry (CM/ECF No. 145).

[9] *See* Union Pacific's Suppl. Br. Regarding 2017 Department of Interior Mem. Op., filed Oct. 16, 2017 (CM/ECF No. 150); Pls.' Mem. in Opp'n to Union Pacific's Suppl. Br. Regarding 2017 Department of Interior Mem. Op., filed Nov. 3, 2017 (CM/ECF No. 151); Reply Mem. Supporting Union Pacific's Suppl. Br. Regarding 2017 Department of Interior Mem. Op., filed Nov. 13, 2017 (CM/ECF No. 152).

## BACKGROUND

The following provides an overview of the relevant undisputed facts[10] for purposes of Plaintiffs' Motion for Summary Judgment:

- In 1856, C.L. Craig of the United States Government Land Office surveyed Township 6 South, Range 2 East, Salt Lake Meridian, in the Utah Territory. This case involves property located in the west half of the northwest quarter of Section 16 of that Township.[11]

- In 1873, Utah Southern Railroad ("Utah Southern") finished construction of a railroad from Salt Lake County to Utah County. The railroad enters Section 16 from the north, a little east of the west section corner, and traverses in a south-easterly direction until it exits the west half of the northwest quarter of Section 16 in the south. This section of the track shall be referred to hereinafter as the "Provo Industrial Lead." This case involves the property located to the west of the railroad track in this particular area.[12]

- In 1875, the United States passed the General Railroad Right of Way Act of 1875 ("1875 Act") granting railroads (including Utah Southern) a right of way across the public lands of the United States to the extent of one hundred feet on each side of the central line of the railroad. *See* 43 U.S.C. § 934. By virtue of the 1875 Act, Utah Southern acquired a right of way to the extent of 100 feet (in both directions) from the center line of the Provo Industrial Lead.[13]

- On or about January 4, 1896, the State of Utah received from the federal government, through the Fundamental Enabling Act of July 16, 1894, 28 Stat. 107, all parts of Section 16 that had not "been sold or

---

[10] These facts are drawn from the parties' summary judgment briefing, as well as the proposed joint pretrial order the parties submitted to the court on July 6, 2017 (hereinafter July 2017 Proposed Pretrial Order) in anticipation of the evidentiary pretrial expert and motions hearings held July 12-14, 2017. The court has not executed the proposed order, but the relevant stipulations remain and were used by the parties and considered by the court. The court notes that the parties use the words "Provo Industrial Lead," which are themselves ambiguous and vague. They are sometimes used as a substitute for the right of way, and sometimes for the railroad track itself. Those ambiguities also appear in the background summary set forth hereafter.

[11] *See* Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 8 of 70.

[12] *See id.*

[13] *See id.*

otherwise disposed of by or under the authority of any act of Congress" for school purposes.[14]

- Union Pacific acquired full ownership of the Provo Industrial Lead in 1987.[15]

- Heber Rentals owns and has been deeded property within Section 16.[16]

- The Provo Industrial Lead runs parallel to the east boundary of Heber Rentals' property.[17]

- The deeds of conveyance leading up to Heber Rentals' current ownership describe real property lying within the western portion of Union Pacific's claimed right of way, if the property descriptions are taken from the survey monuments that are currently in place.[18]

- There is a fence to the west of, and parallel to, the Provo Industrial Lead, and it separates Heber Rentals' claimed property from the track. The fence is located less than 50 feet west of the center line of the current location of the Provo Industrial Lead.[19]

- Plaintiffs are currently using and occupying property up to the fence. Heber Rentals has never claimed to own, nor has it ever used, any portion of Union Pacific's claimed right of way east of the fence.[20]

- The dispute in the present case is limited to the property located to the west of the fence—an area Plaintiffs characterize as the "Disputed Property."[21]

- In 1979, Plaintiffs constructed a building on the northern portion of their claimed property. A portion of this building falls within the 100-foot right of way being claimed by Union Pacific.[22]

---

[14] *See* Pls.' Opp'n to Union Pacific Railroad Company's Mot. for Summ. J. Regarding Heber Rental's Lack of Ownership of Land Within Right of Way, filed March 8, 2017 (CM/ECF No. 79) at 3.

[15] *See* Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 12 of 70.

[16] *See* July 2017 Proposed Pretrial Order, at 16.

[17] *See id.*

[18] *See id.*

[19] *See id.*

[20] *See id.*

[21] *See* Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 11 of 70.

[22] *See id.* at 19 of 70.

- If Heber Rentals' deed descriptions are taken from the existing county monument locations, then the building is situated within the boundaries of the descriptions.[23]

- In 1997, and many times thereafter, Union Pacific represented to Plaintiffs that the property located west of the fence, but within 100 feet of the center line of the Provo Industrial Lead, was the railroad's property and could not be used or occupied by Plaintiffs without a signed lease agreement.[24]

- On or about January 14, 1997, Heber Rentals agreed to lease a portion of the property located within Union Pacific's claimed right of way.[25]

- In 1998, LKL entered into a lease directly with Union Pacific, and the lease between Heber Rentals and Union Pacific was canceled at that time.[26]

- Pursuant to the terms of the lease agreements, Union Pacific was obligated to deliver possession of the Disputed Property, or the portion thereof identified in the lease agreements, to Plaintiffs.[27]

- When the parties entered into each of the lease agreements, the parties believed Union Pacific had an exclusive right to use and possess the Disputed Property.[28]

- Plaintiffs Heber Rentals and LKL have paid Union Pacific at least $8,884.00 and $120,010.69, respectively, in lease payments.[29]

- On March 10, 2014, the U.S. Supreme Court issued its decision in *Marvin M. Brandt Revocable Trust v. United States*, 134 S. Ct. 1257 (2014) ("Brandt").[30]

- After *Brandt*, Plaintiffs interpreted the decision to mean that Union Pacific did not have exclusive use and possession of its right of way.

---

[23] *See id.*

[24] *See* July 2017 Proposed Pretrial Order, at 18.

[25] *See id.*

[26] *See* Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 26 of 70.

[27] *See id.* at 27 of 70.

[28] *See id.* at 30 of 70.

[29] *See id.*

[30] *See* July 2017 Proposed Pretrial Order, at 20.

- Consequently, LKL stopped making lease payments to Union Pacific.[31] The last lease payment was made on January 5, 2015.[32]

- On April 16, 2015, Plaintiffs filed a lawsuit in Utah state court. Their Complaint seeks an order rescinding the leases on the grounds of mutual mistake, claiming that the parties mistakenly believed that Union Pacific had the exclusive right to possess the Disputed Property at the time the leases were created. The Complaint also seeks declaratory relief declaring the leases to be null and void and further declaring that neither Plaintiffs nor their successors are required to make lease payments to Union Pacific or its successors in connection with their use of the Disputed Property.[33]

- On May 12, 2015, Union Pacific removed the lawsuit to this court.[34]

- On May 19, 2015, Union Pacific filed its answer and counterclaim, wherein Union Pacific asks the court to issue an order compelling Plaintiffs to remove their building and property from the Disputed Property and also seeks an award of damages for breach of contract and trespass, among other things. Union Pacific also requests an award of attorney fees pursuant to the attorney fee provision in the leases.[35]

- The precise location of the boundaries of Heber Rentals' property is disputed by the parties.[36]

- In 1874, A.J. Stewart of the Government Land Office performed a retracement survey of Section 16 and reset the survey monuments for the northwest corner and the west quarter corner of Section 16.[37]

- In 1898, the Utah County surveyor performed a survey on the western half of the northwest quarter of Section 16 and created a map (hereinafter "Map 80").[38]

---

[31] *See id.*

[32] *See* Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 32 of 70.

[33] *See id.* at 33 of 70.

[34] *See id.*

[35] *See id.*

[36] *See id.* at 41-47 of 70; Pls.' Mot. for Summ. J, filed July 28, 2017 (CM/ECF No. 127) at 47-65; Pls.' Reply Mem. in Supp. of Their Mot. for Summ. J., filed Aug. 21, 2017 (CM/ECF No. 137) at 41-49.

[37] *See* Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 13 of 70.

[38] *See id.* at 14 of 70.

- In Map 80, the half quarter section was divided into numbered lots.[39]
- Map 80 was filed with the State Board of Land Commissioners, as indicated on the signature block on the bottom right of Map 80.[40]
- The State issued patents to Lots 1, 3, 4, and 5 based on Map 80.[41]
- Lot 2 was retained by the State of Utah and never patented to any other person or entity.[42]
- The location of Lot 2 and the location of Union Pacific's Provo Industrial lead tracks within Lot 2 are disputed by the parties.[43]
- The patents refer to the acreage transferred as calculated from the acreages shown on Map 80.[44]
- In 1909, the northwest section corner and west quarter corner on Section 16 were re-monumented.[45]
- The current section corner marker and quarter section marker are perpetuations of the 1909 re-monumentation.[46]
- Through a series of transfers and court orders, Heber Rentals became the owner of properties located within the properties depicted as Lots 3 and 4 on Map 80.[47]
- The relationship between Map 80 and the location of existing county monument locations—and whether there is a discrepancy between them—is disputed by the parties.[48]

---

[39] *See id.*

[40] *See id.*

[41] *See id.*

[42] *See id.*

[43] *See* Pls.' Reply Mem. in Supp. of Their Mot. for Summ. J., filed Aug. 21, 2017 (CM/ECF No. 137) at 8-9, 13-16.

[44] *See* Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 15 of 70.

[45] *See id.*

[46] *See id.*

[47] *See id.* at 15-17 of 70; Pls.' Reply Mem. in Supp. of Their Mot. for Summ. J., filed Aug. 21, 2017 (CM/ECF No. 137) at 8.

[48] *See* Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 17-18 of 70; Pls.' Reply Mem. in Supp. of Their Mot. for Summ. J., filed Aug. 21, 2017 (CM/ECF No. 137) at 9-12, 16-18.

# DISCUSSION

Plaintiffs' Motion for Summary Judgment seeks the following relief: (i) summary judgment on Count I of the Complaint (Rescission – Mutual Mistake); (ii) summary judgment on a portion of Count VIII of the Complaint (Declaratory Relief); and (iii) dismissal of all of Union Pacific's counterclaims.[49]

In addressing Plaintiff's Motion for Summary Judgment, the court first answers two fundamental questions.

The first fundamental question presented in this case is the existence of an overlap between Plaintiffs' claimed property and Union Pacific's right of way. The court finds that there is such an overlap, borne out by using the railroad track as located on the ground and measuring out from its centerline. While there is an alleged dispute as to the extent of the overlap, the parties have conceded that there is an overlap between the railroad right of way and a portion of the building constructed by Plaintiffs.

The width of the right of way is defined by the 1875 Act itself. The 1875 Act provides:

> The right of way through the public lands of the United States is granted to any railroad company * * * which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road.[50]

In affirming an earlier case arising out of this district, The Tenth Circuit stated the following:

> The district court held that actual construction of the track plus the filing of the specified documents perfected the Railroads' right of

---

[49] *See* Pls.' Mot. for Summ. J., filed July 28, 2017 (CM/ECF No. 127) at 6.

[50] 43 U.S.C. § 934.

8

way to the extent of 100 feet on each side of the center line of the track.[51]

After citing to *Jamestown and Northern R. Co. v. Jones*, 177 U.S. 125, 130-31 (1900), wherein the Supreme Court adopted the rule that "the right of way may be definitely located by the actual construction of the road," the Tenth Circuit stated that "[a]ctual construction is notice of location whether it occurs before or after the [1875] Act."[52]

Using the railroad track as located on the ground, as the cases require, the right of way of the railroad as measured from its centerline extends beyond the west fence and overlaps a portion of the land claimed by Plaintiffs. Information in the record seems to indicate that in the eastern portion of Plaintiffs' claimed land there is an unresolved gap in land description which may well reside in the state of Utah, a non-party to this litigation.

While Plaintiffs suggest that the railroad track may have been moved since its original location, there is an absence of evidence in the record to support such an occurrence.

When measured from the centerline of the track, the suggested dispute between the parties as to surveys and markers and extraneous maps becomes historically interesting but largely irrelevant for present purposes. We have a statutorily mandated beginning point. That resolves the question of location and measurement. As noted by the Tenth Circuit, "state law cannot operate to 'impair the efficacy' of a federal grant or vest title in someone other than the federal grantee."[53]

The second fundamental question presented in this case is the nature and scope of the railroad right of way.

---

[51] *Boise Cascade Corp. v. Union Pac. R. Co.*, 630 F.2d 720, 722 (10th Cir. 1980).

[52] *See id.* at 722-23.

[53] *See id.* at 724.

9

The right of way is limited. The right of way is to be used for railroad purposes.[54] Indeed, the parties agree that, whatever the nature of the easement Union Pacific received under the 1875 Act, the easement must be used for a railroad purpose.[55] Prior to 1875, the railroads had generally done very well in Congress,[56] and the 1875 Act was in part an effort at limiting railroad benefits.[57] On March 10, 2014, the Supreme Court issued its decision in *Marvin M. Brandt Revocable Trust v. United States*, 134 S.Ct. 1257 (2014). The *Brandt* decision merely affirmed what the 1875 Act and the Supreme Court had already said for decades, namely that the right of way provided under the 1875 Act had always been limited by purpose, specifically a railroad purpose.

Having addressed these fundamental questions and determined that (i) an overlap exists between Union Pacific's right of way and at least a portion of the building constructed by Plaintiffs, and (ii) that *Brandt* merely affirmed a truth set forth in the 1875 Act and Supreme Court case law that the 1875 Act only granted a limited right of way to be used for a railroad purpose, the court now turns to Plaintiff's Motion for Summary Judgment. The court will first

---

[54] *See, e.g., Marvin M. Brandt Revocable Tr. v. United States*, 134 S. Ct. 1257, 1265 (2014) (citing *United States v. Union Pacific R. Co.*, 353 U.S. 112, 119 (1957) for its reference to *Great Northern*'s conclusion that, in the period after 1871, "only an easement for railroad purposes was granted"); *Chicago & N. W. Ry. Co. v. Cont'l Oil Co.*, 253 F.2d 468, 472 (10th Cir. 1958) ("Upon the filing of the location map, the railroad acquired an easement for railroad purposes"); *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1133 (9th Cir. 2018) ("[E]ven though we have concluded that the pre-1871 Acts do not require a railroad purpose, we must still decide whether the pipeline served such a purpose for those rights of way acquired under the 1875 Act."); *Beres v. United States*, 104 Fed. Cl. 408, 453 (Fed. Cl., 2012) ("The 1875 Act easements by the 1875 Act's very terms, as validated by contextual history, were limited to railroad purposes").

[55] *See* Aug. 24, 2017 Hr'g Tr., (CM/ECF No. 139) at 8:23-25, 12:7-8, 23:5-6, 26:14-27:2, 29:14-23, 49:1-8; *see also, e.g.*, Pls.' Mot. for Partial Summ. J. on Pls.' Claims for Rescission, Lack of Consideration, Quiet Title, Declaratory Relief and on Def.'s Counterclaims, filed Jan. 20, 2017 (CM/ECF No. 67) at 22, 25; Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 21 and 48 of 70.

[56] *See* Richard White, *Railroaded: The Transcontinentals and the Making of Modern America* 23 (2011).

[57] *See generally Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1125-26 (9th Cir. 2018) (providing historical background to Congress's role in facilitating westward railroad expansion).

address Plaintiffs' request for judgment on the rescission claim and then address the issue of declaratory relief and counterclaims.

## A. Rescission of Lease Agreements

Plaintiffs contend "[t]his entire case is centered on the resolution of one principle of law: did the [1875 Act] convey the 'right of possession' to railroads."[58] Relying on the United States Supreme Court decision in *Brandt*, Plaintiffs asserts that Union Pacific received under the 1875 Act "nothing more than a non-possessory easement, allowing Plaintiffs to occupy and utilize their property encumbered by the right of way in any manner that does not disrupt the authorized use of the right of way by Union Pacific."[59] However, when the parties entered into their lease agreements, it is claimed that both Plaintiffs and Union Pacific believed that Union Pacific owned the right of possession.[60] Plaintiffs contend that it was only after reading *Brandt* and a subsequent Utah state court case that Plaintiffs realized the limitations of Union Pacific's right of way, which realization prompted Plaintiffs to stop making lease payments.[61] Thus, Plaintiffs argue, there was a material mistake of fact by both parties when the parties entered into the lease agreement, which warrants rescission of the leases and a return of the money Plaintiffs have paid under the leases with interest.[62]

The court finds that to some extent—an important extent—Plaintiffs are correct. *Brandt* articulates the *non-possessory* nature of the easement Union Pacific received under the 1875 Act:

> The essential features of easements—including, most important here, what happens when they cease to be used—are well settled as

---

[58] *See* Pls.' Mot. for Summ. J., filed July 28, 2017 (CM/ECF No. 127) at 4.

[59] *See id.* at 4-5.

[60] *See id.* at 66.

[61] *See id.* at 26.

[62] *See id.* at 66-67.

11

a matter of property law. An easement is a "nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." Restatement (Third) of Property: Servitudes § 1.2(1) (1998).[63]

In a footnote, *Brandt* further clarifies:

> Because granting an easement merely gives the grantee the right to enter and use the grantor's land for a certain purpose, but does not give the grantee any possessory interest in the land, it does not make sense under common law property principles to speak of the grantor of an easement having retained a "reversionary interest." A reversionary interest is "any future interest left in a transferor or his successor in interest." Restatement (First) of Property § 154(1)(1936). It arises when the grantor "transfers less than his entire interest" in a piece of land, and it is either certain or possible that he will retake the transferred interest at a future date. *Id.*, Comment *a*. Because the grantor of an easement has not transferred his estate or possessory interest, he has not retained a reversionary interest. He retains all his ownership interest, subject to an easement. See *Preseault v. United States*, 100 F.3d 1525, 1533–1534 (C.A.Fed.1996) (en banc).[64]

Thus, the court agrees with Plaintiffs that Union Pacific received a non-possessory easement under the 1875 Act. But it is not non-possessory in the classic sense. The 1875 Act did indeed give Union Pacific power to possess under a limiting condition. Union Pacific has the power to possess for a railroad purpose. Any right, if any, acquired from Union Pacific's acquiescence in Plaintiffs' possession is always subject to the power of Union Pacific to possess for a railroad purpose. Plaintiffs can occupy and utilize certain described property encumbered by the right of way insofar as it does not interfere with Union Pacific's election, now or in the future, to use and possess for a railroad purpose.

---

[63] *Marvin M. Brandt Revocable Tr. v. United States*, 134 S. Ct. 1257, 1265 (2014).

[64] *Id.* at 1266 n.4.

12

But the court disagrees with Plaintiffs to the extent they contend that rescission of the parties' lease agreements is the result of such a finding. The court finds that rescission is inappropriate for two primary reasons.

First, Plaintiffs' claim for rescission is untimely. While Plaintiffs argue that it was only after the *Brandt* decision that they discovered the limitations on Union Pacific's right of way, *Brandt* merely confirmed what the Supreme Court had already said more than half a century before in *Great Northern R. Co. v. U.S.*, 315 U.S. 262 (1942). In *Great Northern*, the Supreme Court explicitly held that the 1875 Act "clearly grants only an easement, and not a fee."[65] Although Plaintiffs contend *Brandt* clarified what *Great Northern* meant by "easement,"[66] the Supreme Court specifically noted in *Brandt* that the essential features of easements were already "well settled as a matter of property law."[67] Plaintiffs do not dispute that claims for relief based on mistake are subject to a three-year statute of limitations period under Utah Code § 78B-2-305(3).[68] By exercising reasonable diligence and inquiry, there is no reason that Plaintiffs could not have decades earlier used *Great Northern* to make the same arguments it makes today based on *Brandt*.

Second, Plaintiff's claim for rescission is redundant. In the present case, there is no enforceable contract. The parties' "lease agreements" fail to serve a railroad purpose.

---

[65] *See Great Northern R. Co. v. U.S.*, 315 U.S. 262, 271 (1942).

[66] *See* Pls.' Mot. for Summ. J., filed July 28, 2017 (CM/ECF No. 127) at 39.

[67] *Brandt*, 134 S. Ct. at 1265.

[68] *See* Pls.' Opp'n to Union Pacific Railroad Company's Mot. for Partial Summ. J. Re: Pls.' Claims for Rescission, Lack of Consideration, Breach of Contract, Quiet Title, Declaratory Relief, and Unjust Enrichment, filed Dec. 14, 2016 (CM/ECF No. 56) at 5.

The parties agree that an 1875 Act easement must be used for a railroad purpose.[69] The court likewise agrees that an 1875 Act easement only authorizes uses that further a railroad purpose.[70] The railroad's power to occupy is a function of purpose. Though the parameters of "railroad purpose" may not be defined with specificity,[71] it is clear to the court that the parties' "lease agreements" do not serve a railroad purpose. Although Union Pacific has recently tried to recast the lease agreements as precautions that further the railroad purposes of public safety and preservation of the right of way,[72] the effort is unpersuasive. The lease agreements are wholly unnecessary and irrelevant to Union Pacific's ability to preserve the safety and availability of the right of way. That ability is derived not from a private contract with Plaintiffs but from a congressional grant under the 1875 Act. Under the 1875 Act, Union Pacific can prevent

---

[69] See Aug. 24, 2017 Hr'g Tr., (CM/ECF No. 139) at 8:23-25, 12:7-8, 23:5-6, 26:14-27:2, 29:14-23, 49:1-8; see also, e.g., Pls.' Mot. for Partial Summ. J. on Pls.' Claims for Rescission, Lack of Consideration, Quiet Title, Declaratory Relief and on Def.'s Counterclaims, filed Jan. 20, 2017 (CM/ECF No. 67) at 22, 25; Union Pacific's Opp'n Mem. to Pls.' Mot. for Summ. J., filed Aug. 11, 2017 (CM/ECF No. 132) at 21 and 48 of 70.

[70] See, e.g., Marvin M. Brandt Revocable Tr. v. United States, 134 S. Ct. 1257, 1265 (2014) (citing United States v. Union Pacific R. Co., 353 U.S. 112, 119 (1957) for its reference to Great Northern's conclusion that, in the period after 1871, "only an easement for railroad purposes was granted"); Chicago & N. W. Ry. Co. v. Cont'l Oil Co., 253 F.2d 468, 472 (10th Cir. 1958) ("Upon the filing of the location map, the railroad acquired an easement for railroad purposes"); Barahona v. Union Pac. R.R. Co., 881 F.3d 1122, 1133 (9th Cir. 2018) ("[E]ven though we have concluded that the pre-1871 Acts do not require a railroad purpose, we must still decide whether the pipeline served such a purpose for those rights of way acquired under the 1875 Act."); Beres v. United States, 104 Fed. Cl. 408, 453 (Fed. Cl., 2012) ("The 1875 Act easements by the 1875 Act's very terms, as validated by contextual history, were limited to railroad purposes").

[71] See Aug. 24, 2017 Hr'g Tr., (CM/ECF No. 139) at 24:7-11; 34:21-24.

[72] In its post-hearing supplemental briefing, Union Pacific contended that its authorization of Plaintiffs' activities via the lease agreements "derives from or furthers a railroad purpose" because it "(1) requires Plaintiffs to obtain a $1 million insurance policy covering the portion of the right of way they are using, (2) reserves to Union Pacific 'the right to construct, maintain and operate new and existing facilities (including, without limitation, trackage, fences, communication facilities, roadways and utilities)' within the right of way; (3) requires Plaintiffs to keep the right of way 'in a safe, neat, clean and presentable condition'; (4) prohibits the 'use, treatment, manufacture, production, storage or recycling of any Hazardous Substances' and release or discharge of Hazardous Substances within the right of way; (5) prohibits Plaintiffs from altering or making improvements within the right of way without Union Pacific's consent; (6) requires Plaintiffs to comply with Union Pacific's clearance standards; and (7) allows Union Pacific to terminate the lease upon written notice." See Union Pacific's Suppl. Br. Regarding 2017 Department of Interior Mem. Op., filed Oct. 16, 2017 (CM/ECF No. 150) at 19-20 of 21. According to Union Pacific, "[a]ll of these protections further the operation of the railroad by protecting it from liability, preventing contamination of the right of way, regulating Plaintiffs' activities to avoid additional encroachments into or improvements within the right of way, and preserving Union Pacific's ability to use the right of way for future operations." See id. at 20 of 21.

anyone—Plaintiffs and otherwise—from interfering in any way with Union Pacific's ability to effectively and safely operate a railroad.

"The 1875 Act was passed at a time when the federal government was especially concerned with easing and enabling means of travel to and settlement of the Western United States."[73] Right of ways granted under the 1875 Act "must be limited to the purpose described in the Act itself, commensurate with Congress's intent to provide for transportation across states."[74] It would be an impermissibly expansive reading of the 1875 Act to find that it allows Union Pacific to enter into lease agreements under which Union Pacific receives payments in exchange for letting Plaintiffs engage in business that does not serve a railroad purpose.[75] It would be essentially finding that Union Pacific is allowed to authorize third parties to do something on the right of way that Union Pacific itself is not authorized to do—and indeed, for Union Pacific to receive payment for it.[76]

---

[73] *Geneva Rock Prod., Inc. v. United States*, 107 Fed. Cl. 166, 171 (Fed.Cl., 2012).

[74] *See id.* at 172.

[75] *See Beres v. United States*, 104 Fed. Cl. 408, 447-48 (Fed.Cl., 2012) ("Plaintiffs are correct when they state: 'Nothing in the [1875] Act purports to create a unique estate in the railroad. Nothing in the Act purports to characterize the easement, which was the interest the railroad received, as anything other than an easement for the purpose specified, to inure to the benefit of the subsequent private owner of the subdivision burdened by the easement. Nothing in the Act purports to transmogrify these railroad easements into a broad, unspecified purpose.' ... Even strictly construed against the original grantee, an expansive reading to include public recreational trails in the scope of the 1875 Act grant would appear to defeat the Congressional intent to make public lands available to railroad companies for the purpose of constructing railway lines."); *Geneva Rock Products, Inc. v. United States*, 107 Fed.Cl. 166, 172 (Fed.Cl., 2012) ("As such, 1875 Act easements must be limited to the purposes described in the Act itself, commensurate with Congress's intent to provide for transportation across states. This is a purpose inconsistent with use of that same land as a recreational trail, the central purpose of which is to provide a venue for healthful exercise and enjoyment of the outdoor environment rather than conveyance of persons or goods."). The court notes that neither Plaintiffs nor Defendants have argued that the Plaintiffs' underlying activities on the disputed area, which the lease agreements attempt to authorize, do themselves further a railroad purpose.

[76] *Cf. Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1135 (9th Cir. 2018) ("We are similarly unpersuaded by the district court's conclusion that the incidental-use doctrine does not apply because the pipeline is operated by a third-party and for private gain. *Grand Trunk* makes it clear that a railroad may license third parties to do what it could do itself, even if the third party benefits in addition to the railroad. *See* 91 U.S. at 468 ('[W]e are not prepared to assert that [the railroad] may not license the erection of buildings for its convenience, even though they may be also for the convenience of others.')."); *Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*, 231 Cal.App.4th 134, 175 (Cal.App. 2 Dist., 2014) ("It is difficult to imagine that in a time of national crisis a rational

Thus, as the court finds the lease agreements do not serve a railroad purpose, they are unenforceable.[77]

Given that Plaintiff's claim for rescission is untimely and redundant, the court finds Plaintiff's Motion for Summary Judgment as to that claim is denied. Further, Plaintiffs' request for the return of payments made to Union Pacific under the "lease agreements," is denied. This request is footed on the rescission claim, which the court has denied. Additionally, the court notes that Plaintiffs at any time during its "lease" with Union Pacific had the same option of nonpayment to Union Pacific based on the 1875 Act and *Great Northern*.[78]

### B. **Declaratory Relief and Counterclaims**

Having determined that rescission of the parties' unenforceable "lease agreements" is unwarranted, the court turns to the remaining relief sought by Plaintiffs in their Motion for Summary Judgment: declaratory relief and dismissal of Defendant's counterclaims.[79]

Plaintiffs seek the following declarations from the court:

1. that Union Pacific and its successors or assigns have a non-possessory easement in the Disputed Property;

---

Congress would pass, and the President would sign, laws to encourage the railroads to construct a transportation corridor through public lands and across the nation, seen as critical to the safety and development of the country, and at the same time mean to give the railroads the right to rent the subsurface under that corridor to private third parties from a nonrailroad industry, in order to generate revenue for itself.").

[77] The court notes that Union Pacific suggests the court should apply a looser interpretation of "railroad purpose" under the incidental use doctrine. *See* Union Pacific's Suppl. Br. Regarding 2017 Department of Interior Mem. Op., filed Oct. 16, 2017 (CM/ECF No. 150) at 6-8 of 21; Reply Mem. Supporting Union Pacific's Suppl. Br. Regarding 2017 Department of Interior Mem. Op., filed Nov. 13, 2017 (CM/ECF No. 152) at 3-4. As construed by Union Pacific, the incidental use doctrine allows it to lease its right of way insofar as the lease is incidental to or not inconsistent with its continued use of its right of way for railroad purposes. *See* Union Pacific's Suppl. Br. Regarding 2017 Department of Interior Mem. Op., filed Oct. 16, 2017 (CM/ECF No. 150) at 7 of 21. But the court finds nothing in the text, history, or purpose of the 1875 Act that suggests such a broad interpretation of railroad purpose is appropriately applied to rights of way granted under the 1875 Act.

[78] The court further notes that the fact that the contract is unenforceable because of circumstances of this case does not mean that one cannot agree to pay money, and indeed pay money, and receive a benefit, however defined, even if the contract as a contract is unenforceable.

[79] *See* Pls.' Mot. for Summ. J., filed July 28, 2017 (CM/ECF No. 127) at 6.

2. that all lease agreements between Union Pacific and Plaintiffs pertaining to the Disputed Property, and all iterations of and amendments to the lease agreements, are null and void, and Plaintiffs have no liability in connection therewith;

3. that neither Plaintiffs, nor their successors or assigns, nor their tenants, nor anyone occupying the Property with their permission, are required to make any lease payments to Union Pacific or its successors or assigns in connection with their use of the Disputed Property;

4. that no lease or rent can ever be charged by Union Pacific or its successors and assigns with respect to the use or occupancy of the Disputed Property by anyone;

5. that Union Pacific has no right to exclude Plaintiffs and their successors, invitees, and tenants from the Disputed Property; and

6. that the Court's Order may be recorded with the appropriate government agencies, including the Utah County Recorder, to put the public on notice of the entry of the order and to clarify issues relative to the Property.[80]

The court denies Plaintiff's Motion for Summary Judgment as to these requests for declaratory relief. The declarations sought by Plaintiffs are in excess of the necessities of this case. However, the court does declare that *Brandt* itself declares that Unions Pacific has a non-possessory easement in the area covered by its right of way. The court further declares that possession is available to Union Pacific only insofar as it exercises its power to use land subject to its right of way for a railroad purpose.

Further, Plaintiffs' Motion for Summary Judgment seeks the dismissal of all of Defendant's counterclaims with prejudice.[81] Defendant's counterclaims against Plaintiffs are (1) declaratory relief, (2) breach of contract, (3) encroachment/trespass, and (4) ejectment.[82]

The specific declarations sought by Union Pacific in its counterclaims are as follows:

1. The United States granted a right of way to Utah Southern pursuant to the terms of the 1875 Act.

---

[80] *See id.* at 7-8.

[81] *See id.* at 8.

[82] *See* Am. Answer and Countercl., filed Jan. 15, 2016 (CM/ECF No. 15) at 21-25.

2. The 1875 Right of Way extends to 100 feet on each side of the centerline of the Provo Industrial Lead in Section 16.
3. Union Pacific is the successor in interest to Utah Southern's 1875 Right of Way.
4. The 1875 Right of Way entitles Union Pacific to exclusive use and possession of the real property within 100 feet on each side of the centerline of the Provo Industrial Lead.

Plaintiffs do not dispute the first three declarations sought by Union Pacific.[83] As to the fourth, the court grants Plaintiffs' Motion for Summary Judgment. The 1875 Act provides Union Pacific a non-possessory easement that only allows for exclusive use and possession insofar as Union Pacific elects to use the land subject to its easement for a railroad purpose.

As to Union Pacific's counterclaims for breach of contract, encroachment/trespass, and ejectment, the court grants Plaintiffs' Motion for Summary Judgment. One cannot breach an unenforceable contract, nor encroach/trespass on a right of way not used for railroad purposes. The occupancy by Plaintiffs was acquiesced in by Union Pacific. The question of ejectment is premature, as Union Pacific has not indicated that it wants to use the property for a railroad purpose. Union Pacific's right of way is a function of limited purpose and use.

---

[83] *See* Pls.' Mot. for Summ. J., filed July 28, 2017 (CM/ECF No. 127) at 69.

## CONCLUSION

Having determined that (i) the claim for rescission is unwarranted because it is untimely and redundant, (ii) the declaratory relief sought by Plaintiffs are in excess of the necessities of the case, and (iii) summary judgment is appropriate for Union Pacific's counterclaims, as Union Pacific has not sought to use the relevant property for a railroad purpose, the court hereby GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Summary Judgment.

Again noting that the State of Utah may be involved and helpful to the parties, the court has considered the issues presented by the parties, and thus let judgment be entered accordingly.

DATED this 29th day of May, 2018.

Bruce S. Jenkins
United States Senior District Judge